IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JAMES M. SIMONES; Individually )<br>and as Trustee of the ANCIENT OF )<br>DAYS TRUST; JO ANN HARTMAN )<br>STOCKTON as Trustee of the ANCIENT )<br>OF DAYS TRUST; BROOKY )<br>STOCKTON as Trustee of the ANCIENT )<br>OF DAYS TRUST; and ADELINA )<br>MONNET, )<br>)<br>Defendants. ) | Case No. 1:20-cv-00795-PJK-SCY |

**MEMORANDUM OPINION AND ORDER**
**GRANTING UNITED STATES' MOTION FOR SUMMARY JUDGMENT**
**(ECF No. 87)**

THIS MATTER comes on for consideration of the United States' Motion for Summary Judgment filed July 29, 2021 (ECF No. 87). After receiving a time extension, see ECF No. 94, Defendant James M. Simones filed a response to the motion and an affidavit on August 23, 2021. ECF Nos. 97, 99. Defendants Jo Ann Hartman Stockton and Brooky Stockton also filed a response on August 23 arguing against summary judgment. ECF No. 98. Defendant Adelina Monnet failed to file a response to the government's motion, which "constitutes consent to grant the motion" as to her. D.N.M.LR-Civ. 7.1(b), 7.4(a). The court finds that the government's motion is well taken and should be granted.

## Background

On August 10, 2020, the government filed suit against Mr. Simones in order to collect unpaid federal income taxes as well as additional penalties and accrued interest. Am. Compl. at 1 (ECF No. 2). In addition to Mr. Simones, the government also filed suit against Ms. Monnet, Mr. Stockton, and Ms. Stockton.[1] Id. at 2. Ms. Monnet is a "close associate" of Mr. Simones, and the government alleges she and Mr. Simones have made fraudulent property transfers that may affect its ability to satisfy the tax liabilities. Id. at 2, 12–14. Mr. Stockton, Ms. Stockton, and Mr. Simones are all trustees of the Ancient of Days Trust ("Trust"). Id. at 2. The government contends the Trust holds title to property as a "nominee" of Mr. Simones and claims that property in order to satisfy the tax liability. Id. at 9–10.

As for Mr. Simones' taxes, the IRS made assessments against him for unpaid taxes, interest, and penalties related to tax periods in 2007, 2008, 2009, 2011, and 2012. Id. at 3; Ex. 1 (ECF No. 2-1); Ex. 19 (ECF No. 87-1). As of May 31, 2021, the balance was $284,684.04. Mot. Summ. J. at 2–3; see Exs. 1, 19. In an attempt to recover the unpaid balance, the IRS also gave notice and demand for payment of the unpaid tax liabilities. Am. Compl. at 5; Ex. 20 (ECF No. 87-2). However, Mr. Simones has yet to make a full payment. Id. As a result, the government turned to filing liens against Mr.

---

[1] These parties were properly added under 26 U.S.C. § 7403, which provides that "[a]ll persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto."

Simones' property.  Beginning in November 2011, the IRS filed numerous public Notices of Federal Tax Lien ("NFTL") in the real property records of Torrance and Bernalillo Counties, New Mexico.  Ex. 2 (ECF No. 2-2).  The government recorded these NFTLs against Mr. Simones and the Trust.  Id.; I.R.C. § 6323(f)(1)(A)(i).  The government seeks to enforce these tax liens against three properties: (1) the Holiday property, (2) the Johnson property, and (3) the Zamora property.  Am. Compl. at 6–9.

First, the Holiday property consists of the land (and all the improvements, buildings, and appurtenances) located at 205 Holiday Circle, Moriarty, New Mexico 87035.  Id. at 7.  The Holiday property's legal description is:

> LOT NUMBERED THREE (3) IN BLOCK NUMBERED TWO (2) OF RINCON ESCONDIDO ADDITION TO THE CITY OF MORIARTY, NEW MEXICO.

Id. at 7–8.  Mr. Simones obtained this property in October 2000; the deed was recorded in Torrance County on February 27, 2001.  Ex. 3. (ECF No. 2-3).  On September 14, 2004, Mr. Simones transferred the Holiday property to Ms. Monnet via a quitclaim deed.  Ex. 5 (ECF No. 2-5).  Then, on April 25, 2005, Ms. Monnet transferred the property via quitclaim deed to the Trust.  Ex. 7 (ECF No. 2-7).  Both quitclaim deeds appear to include the same handwriting, which the government believes belongs to Mr. Simones.  Am. Compl. at 10; compare Ex. 5 with Ex. 7.

Mr. Simones has remained connected to the Holiday property following the transfers.  For example, his mailing address — P.O. Box 2054, Moriarty, New Mexico 87035-2054 — is associated with the Holiday property.  Am. Compl. at 10.  Mr. Simones requested utility service for the property and he is listed as its "landlord."  Ex. 12 (ECF

3

No. 2-12); Ex. 13 (ECF No. 2-13).  Mr. Simones and his P.O. box are also listed on the Holiday property's bills, which he has personally paid.  Exs. 12–13; Ex. 14 (ECF No. 2-14); Ex. 15 (ECF No. 2-15).

Second, the Johnson property consists of the land (and all the improvements, buildings, and appurtenances) located at 16 Johnson Lane, McIntosh, New Mexico 87032.  Am. Compl. at 8.  The Johnson property's legal description is:

> TRACT DESIGNATED "B-1-C", SITUATE (SIC) WITHIN THE NORTHWEST QUARTER (NW ¼) OF SEC THIRTY ONE (31), TOWNSHIP EIGHT (8) NORTH, RANGE NINE (9) EAST, N.M.P.M., AS THE SAME IS SHOWN AND DESIGNATED ON THAT CERTAIN PLOT ENTITLED "LANDS OF DR. PAUL H. JOHNSON, PREPARED BY TIMOTHY ODEN , N.M.R.L.P.S. #8667 ON MAY 23, 1988, AT 4:17 O'CLOCK, PM, AS DOCUMENT NUMBER 79391, AND FILED IN CABNET (SIC) B, SLIDE 153, PLAT RECORDS OF TORRANCE COUNTY, NEW MEXICO, FIELD IN THE OFFICE OF THE COUNTY CLERK OF TORRANCE COUNTY, NEW MEXICO, SUBJECT THERETO, EASEMENTS, RESTRICTIONS, AND RESERVATIONS OF RECORD IN THE OFFICE OF THE CLERK OF SAID COUNTY AND STATE.

Id.  On July 16, 2008, the Johnson property was transferred to the Trust from a third party via a special warranty deed.  Ex. 8 (ECF No. 2-8).  The deed was recorded on August 30, 2010, in Torrance County.  Id.

Similar to the Holiday property, Mr. Simones is also connected to the Johnson property.  Mr. Simones pays the utilities for the property and is listed on the utilities account.  Ex. 16 (ECF No. 2-16).  Moreover, Mr. Simones made a "Manufactured Home Request to Change Valuation Status" with Torrance County for the Johnson property in 2012.  Ex. 17 (ECF No. 2-17).

Third, the Zamora property consists of the land (and all the improvements, buildings, and appurtenances) located at 15 N. Zamora Road, Tijeras, New Mexico 87059.  Am. Compl. at 9.  The Zamora property's legal description is:

> A CERTAIN TRACT OF LAND SITUATE (SIC) IN SECTION 14, TOWNSHIP 10 NORTH, RANGE 5 EAST, NEW MEXICO PRINCIPAL MERIDIAN, WITHIN THE CANON DE CARNUE GRANT, COUNTY OF BERNALILLO, STATE OF NEW MEXICO.

Id.  The property was originally purchased by Ms. Monnet in December 2004.  Ex. 9 at 1–4 (ECF No. 2-9).  Less than a year later, she transferred the property to the Trust via a quitclaim deed.  Id. at 5.  In 2015, the Trust conveyed the property via a special warranty deed to another trust, Oro De Dios.  Id. at 6.  Oro De Dios includes Mr. Simones' P.O. Box as one of the mailing addresses.  Ex. 10 (ECF No. 2-10).  Finally, on May 1, 2018, Oro De Dios and the Trust released their deeds to the Zamora property, the Trust revoked its deed to Oro De Dios, Ms. Monnet revoked her deed to the Trust, and she filed an affidavit claiming to own the property.  Ex. 11 (ECF No. 2-11).

In its motion for summary judgment, the government seeks to (1) "reduce to judgment the unpaid federal tax liabilities owed by" Mr. Simones, (2) "enforce the associated federal tax liens against" the three properties, (3) obtain a judgment that the Trust holds title to the properties "as the nominee" of Mr. Simones, and (4) "set aside fraudulent conveyances of property from" Mr. Simones to Ms. Monnet and the Trust. Mot. Summ. J. at 1.  Ultimately, the government wants to foreclose the properties and sell them in order to recover the unpaid balance.  Id. at 23–24.

5

## Discussion

A motion for summary judgment should be granted when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court views the factual record and reasonable inferences that may be drawn from it in the light most favorable to the nonmoving party. Banner Bank v. First Am. Title Ins. Co., 916 F.3d 1323, 1326 (10th Cir. 2019). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

An important purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses," Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986), and a non-movant cannot rest on its pleadings but must come forward with "significantly probative" evidence demonstrating a need for a trial, Anderson, 477 U.S. at 249–50. The procedure for showing that a material fact identified by the movant either cannot be established or is genuinely disputed is contained in Fed. R. Civ. P. 56(c)(1)(A) and (B). The failure to address a fact or cite materials in the record may result in summary judgment. Fed. R. Civ. P. 56(e)(2); Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992).

**I.    The United States is Entitled to Reduce the Tax Assessments Against Mr. Simones to Judgment**

The government first seeks to reduce Mr. Simones' tax liability to judgment by relying on the IRS' tax assessments as evidence that he owes $284,684.04.  IRS tax assessments — which are referred to as "Certificates of Assessments" or "Form 4340s" — are "entitled to a legal presumption of correctness."  United States v. Fior D'Italia, Inc., 536 U.S. 238, 242 (2002); see Guthrie v. Sawyer, 970 F.2d 733, 737 (10th Cir. 1992).  This presumption helps the government prove its case.  See Fior D'Italia, 536 U.S. at 242.  In fact, if the taxpayer does not present evidence showing the assessments are invalid, "a district court may properly rely on the forms to conclude that valid assessments were made."  Guthrie, 970 F.2d at 737–38.

The government has submitted Certificates of Assessments for Mr. Simones that identify his tax liabilities from 2007, 2008, 2009, 2011, and 2012.  Exs. 1, 19.  The government also notes that Mr. Simones self-reported his income for the 2008 tax period.  See Ex. 1 at 12.  Although Mr. Simones raises a number of arguments as to why summary judgment is not proper, he does not present any evidence that undermines the validity of the assessments.  Therefore, this court concludes that Mr. Simones owes $284,684.04 in unpaid tax liability and the government is entitled reduce that liability to judgment.

## II. The United States Has Valid Tax Liens Against Mr. Simones' Interest in the Holiday, Johnson, and Zamora Properties

The government next seeks to collect on the unpaid tax liabilities by enforcing liens against the Holiday, Johnson, and Zamora Properties.  Under I.R.C. § 6321, the government "may satisfy a tax deficiency by imposing a lien on any property or rights to

property belonging to the taxpayer." United States v. Tingey, 716 F.3d 1295, 1300 (10th Cir. 2013) (citation omitted). Here, titles to the properties are currently held by either the Trust or Ms. Monnet. See Exs. 7–11. Thus, in order for the government to enforce its liens, it first seeks a determination that: (1) the Trust is Mr. Simones' nominee and that he is the true beneficial owner, and (2) any property transfers to Ms. Monnet and subsequent transfers to the Trust were fraudulent and should be set aside. Mot. Summ. J. at 15, 18.

> *a. The Ancient of Days Trust is the Nominee of Mr. Simones*

The government seeks a determination that the Trust is a nominee of Mr. Simones, thus making the Holiday and Johnson Properties subject to liens. Property that may be subject to a lien includes "not only property and rights to property owned by the taxpayer but also property held by a third party if it is determined that the third party is holding the property as a nominee of the delinquent taxpayer." Tingey, 716 F.3d at 1300 (quoting Holman v. United States, 505 F.3d 1060, 1065 (10th Cir. 2007)). The Trust will be considered a nominee if Mr. Simones "has engaged in a legal fiction by placing legal title to property in the hands of [the Trust] while actually retaining some or all of the benefits of true ownership." Id. In assessing the nominee question, courts will first look to state law to determine whether the taxpayer has rights in the property. Id. After that, courts may consider other factors including whether consideration was paid, the relationship between the parties, and whether the transferor acts like the owner. See Holman, 505 F.3d at 1065 n.1, 1068.

Here, the evidence points to the Trust being a nominee of Mr. Simones. To start, New Mexico law recognizes the doctrine of resulting trusts, which allows the court to

"infer that the holder of title holds it in trust for the beneficial owner." Schmitz v. Smentowski, 785 P.2d 726, 733 (N.M. 1990). This means that Mr. Simones can have an interest in the properties despite the Trust holding the titles. Furthermore, other factors indicate that the Trust is Mr. Simones' nominee. The Trust lacks an identification number and it has never filed tax returns. Ex. 20 at 2. Mr. Simones and the Trust appear closely related considering Mr. Simones' mailing address (P.O. Box 2054) is associated with the Holiday property and is listed as the Trust's address on the Johnson deed. Am. Compl. at 10; Ex. 8. And most importantly, Mr. Simones has acted like an owner of these properties. He is the one making utility payments for both properties, he is associated with the utility accounts, and he makes service and other requests on behalf of the properties. See Exs. 12–17. Even Mr. Simones seems to admit that he owns the properties. Compare Am. Compl. at 7, ¶18 ("Defendant, James M. Simones, owns interests in multiple real properties (the 'Subject Properties') . . . .") with Answer at 3, ¶18 ("Admitted.") (ECF No. 10).

Therefore, the government has established that the Trust is Mr. Simones' nominee, which makes the Holiday and Johnson properties subject to the government's federal tax liens. See Tingey, 716 F.3d at 1300.

### b. *The Property Transfers to Ms. Monnet and Subsequent Transfers to the Trust Were Fraudulent and Will Be Set Aside*

The government next seeks a determination that the various transfers of property to both Ms. Monnet and the Trust were fraudulent and should be set aside. This is because property rights that are "found under state law to have [been] fraudulently

9

conveyed to a nominee" are also subject to federal tax liens.  In re Krause, 637 F.3d 1160, 1166 (10th Cir. 2011).  Under New Mexico law, a creditor can void a transfer made by a debtor, if the transfer was made:

> (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> > . . .
> > (b) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

N.M. Stat. Ann. § 56-10-18(A).  There are a number factors relevant to determining "actual intent," including, among other things, whether the transfer "was to an insider," whether "the debtor retained possession or control of the property," and whether "the debtor was insolvent or became insolvent shortly after the transfer was made."  Id. § 56-10-18(B).

Beginning with the Holiday property, it was first transferred from Mr. Simones to Ms. Monnet, and then transferred from Ms. Monnet to the Trust.  Exs. 5, 7.  But as discussed above, Mr. Simones appears to retain significant control over the Holiday property.  As for the Zamora property, it was transferred from Ms. Monnet to the Trust and from the Trust to Oro De Dios.  Ex. 9.  Currently, title to the Zamora Property is held by Ms. Monnet, but the circumstances surrounding that status raise questions.  Over the course of one day, Oro De Dios and the Trust released their deeds, Ms. Monnet and the Trust also revoked their deeds, and Ms. Monnet filed an affidavit claiming to own the property.  Id.  This type of coordination reflects a close relationship between Mr.

Simones, Ms. Monnet, and the Trust, which suggests an effort by Mr. Simones to avoid tax liability.

The timing of these transfers is probative evidence of tax avoidance. In June 2004, the IRS assessed taxes against Mr. Simones for the 2001 tax period. Ex. 4 at 6–7. Mr. Simones was also aware of his potential tax liability in 2003 considering he submitted requests for a collection due process ("CDP") hearing related to 1999 and 2000 tax assessments. Id. at 2, 5. But in September 2004, Mr. Simones transferred the Holiday property to Ms. Monnet, which she transferred to the Trust less than a year later. Exs. 5, 7. Likewise, the Zamora property was being transferred while Mr. Simones' tax liabilities continued to grow due to accrued interest and penalties. See Exs. 1, 19. This timing is strong evidence of Mr. Simones' intent to hinder the government's ability to recover unpaid taxes.

Accordingly, given the summary judgment evidence, the court concludes that the transfers of the Holiday and Zamora properties were fraudulent under New Mexico law and should be set aside. Mr. Simones therefore retains property interests in the Holiday and Zamora properties that are subject to federal tax liens. See In re Krause, 637 F.3d at 1166.

### III.   This Court May Order the Sale of the Properties

Given that the government has valid liens on the Holiday, Johnson, and Zamora properties, it asks this court to enforce those liens by ordering that the properties be sold. If this court determines that the government has established "claims to and liens upon the property," the court "may decree a sale of such property . . . and a distribution of the

11

proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." 26 U.S.C. § 7403(c).  This authority includes the power to sell the entire property, even if there are third-party interests at stake.  See United States v. Rodgers, 461 U.S. 677, 693–94 (1983).  However, third-party interests can be recognized through "judicial valuation and distribution."  Id.

Given that the government has established Mr. Simones' federal tax liabilities and that its liens on the properties are valid, this court will order the sale of the properties to enforce the liens.  The court will order that the properties be sold upon post-judgment motions by the government.  The court does note, however, that it retains discretion in determining how to sell the properties while enforcing the judgment in favor of the government.  See id. at 708–11; Arlin Geophysical Co. v. United States, 946 F.3d 1234, 1239 (10th Cir. 2020).

### IV.     Defendants' Counterarguments Are Meritless

Mr. Simones filed a response to the government's motion arguing against summary judgment.  His response failed to "specifically controvert[]" the material facts set forth in the government's motion, meaning those facts are deemed undisputed under the local rules.  See D.N.M.LR-Civ. 56.1(b).  For example, Mr. Simones contends that (1) the government failed to establish subject matter jurisdiction over the property, (2) there are no undisputed facts, (3) there are disputed facts about the government's jurisdiction over him, (4) the assessments and liens are invalid, and (5) the government misapplied the tax statutes because he is not a "person" or "taxpayer" under those laws.  See Def. Simones Resp. at 13, 55–56 (ECF No. 97).  Having reviewed Mr. Simones'

12

filings in opposition to the government's motion, the court finds his arguments to be meritless. See, e.g., Lonsdale v. United States, 919 F.2d 1440, 1448 (10th Cir. 1990); United States v. Wankel, 475 F. App'x 273, 276 (10th Cir. 2012) (unpublished). Likewise, Mr. and Ms. Stockton's response raises many of the same tax-defier arguments as Mr. Simones, but they also challenge the veracity of Lonni Weinstein's declaration and Nicole Salazar's certification of the assessments. See Defs. Stockton Resp. at 29–39 (ECF No. 98). However, they do not provide any countervailing evidence that would overcome the presumption of the assessment's validity. See Guthrie, 970 F.2d at 737–38; United States v. Gerads, 999 F.2d 1255, 1256 (8th Cir. 1993). Thus, both Mr. Simones' response and Mr. and Ms. Stockton's response are insufficient to defeat summary judgment. There is little to be gained by refuting irrational, tax-defier arguments against the federal tax system. See Crain v. Comm'r, 737 F.2d 1417, 1417 (5th Cir. 1984); Wnuck v. Comm'r, 136 T.C. 498, 501 (2011).

## V.     Defendants' Efforts to Disqualify the Undersigned are Rejected

Based upon this court's ruling denying their motions to dismiss (ECF No. 75 filed July 15, 2021), Mr. Simones alleges that the undersigned should be removed from the case based upon "extreme prejudice toward the Defendant in favor of the Plaintiff" citing 28 U.S.C. § 144. Notice of Claim of Bias and Prejudice at 1 (ECF No. 104) (filed August 30, 2021). Both Mr. Simones and Ms. Stockton have submitted affidavits. Section 144 requires timely and sufficient affidavits. Green v. Branson, 108 F.3d 1296, 1305 (10th Cir. 1996). Neither condition is satisfied here. More than six weeks elapsed after the ruling denying the motions to dismiss and not until briefing was complete on the

government's summary judgment motion (July 27, 2021), was this pleading filed. Although the court cannot consider the truth of facts alleged, "[legal] conclusions, rumors, beliefs, and opinions are not sufficient." Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir. 1987). The affidavits do not demonstrate "personal bias or prejudice" against any party or in favor of any adverse party to these proceedings. Adverse rulings almost never provide a basis for disqualification, particularly when no extrajudicial source is involved. Liteky v. United States, 510 U.S. 540, 555 (1994).

NOW, THEREFORE, IT IS ORDERED that:

(1) The United States' Motion for Summary Judgment filed July 29, 2021 (ECF No. 87) is granted.

(2) Any pending motions or requests are hereby denied.

DATED this 31st day of August 2021, at Santa Fe, New Mexico.

/s/ Paul Kelly, Jr.
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

Counsel:

Jonathan L. Blacker, Trial Attorney, Tax Division, U.S. Department of Justice, Dallas, Texas (David A. Hubbert, Acting Assistant Attorney General with him on the briefs), for Plaintiff.

James M. Simones, pro se.

Jo Ann Hartman Stockton, pro se.

Brooky Stockton, pro se.

Adelina Monnet, pro se.